**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Migel Manuel Gross, | : | Case No. 1:14CV1082 |
| Petitioner, | : | |
| | : | Judge Dan Aaron Polster |
| v. | : | |
| | : | **MAGISTRATE'S REPORT AND** |
| Bennie Kelly, Warden, | : | **RECOMMENDATION** |
| Respondent. | : | |
| | : | |

## I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to Local Rule 72.2(b)(2). Pending are Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Docket No. 1), Respondent's Motion to Dismiss (Docket No. 9), Petitioner's Reply (Opposition) to Motion To Dismiss (Docket No. 17) and Respondent's Reply To Opposition To Motion To Dismiss (Docket No. 18). Given the filing date of the petition, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996) apply. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

For the reasons set forth below, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL HISTORY

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by the state court are presumed correct. *Duncan v. Sheldon*, 2014 WL 185882, *3 (N.D.Ohio 2014) (*citing* 28 U.S.C. § 2254(e)(1); *see also Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir.2013) *cert.*

*denied*, 134 S.Ct. 693 (2013)).  The habeas applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  *Id.*

The state appellate court made the following findings of fact in *State v. Gross*, 2012 WL 2522657, *1-2 (Ohio 11th dist. Ct. App. 2012).  :

> {¶ 2} Late in the evening on February 12, 2008, M.W., the victim, was at home with her mother; her siblings; her eldest sister, Brenda Williams; and Brenda's two children. Brenda was 18 years of age; M.W. was 14 years of age. M.W.'s two youngest siblings were asleep with their mother upstairs. Brenda was cleaning; M.W's older brother and his friend, Charlie, were watching television on the first floor of the home.
>
> {¶ 3} Gross called and requested to come over to the home to see Brenda. Gross, who was 33 years of age and approximately 5'8" and 310 pounds, went by the nickname, "Meat." Brenda did not want to see Gross and instructed M.W. to tell Gross that she was not home. M.W. did as instructed. Contrary to the instructions of M.W., Gross came to the home; Brenda allowed Gross to enter the home.
>
> {¶ 4} Gross followed Brenda into her bedroom that was occupied by her two children. Brenda testified that Gross took off his boots and began to make sexual advances toward her. As a result of Brenda refusing Gross's advances, he became angry. Thus, he sat in a chair outside of the bedroom, close to the door.
>
> {¶ 5} Approximately five to ten minutes later, Brenda testified that she opened her bedroom door and noticed all of the lights off in the home. Further, her brother and his friend were no longer watching television on the couch. Brenda stated that she began to walk through the first floor of the home, where M.W's room was located. Brenda attempted to open M.W's bedroom door, but Gross's body was blocking the entrance. Struggling to get inside the room, Brenda stated that she observed Gross performing oral sex on M.W. Brenda testified that despite yelling and hitting Gross, he continued to perform oral sex on M.W.
>
> {¶ 6} After the incident, Gross incessantly telephoned the home—at times, calling every 30 seconds for several hours. Brenda testified that Gross offered to pay M.W. $500 if she would not report the incident to the police. These telephone calls were documented through phone records. All of the telephone calls were initiated by Gross.
>
> {¶ 7} M.W. also testified at trial. She stated that she was talking on the telephone when Gross "peeked in" her bedroom. Feeling uncomfortable, M.W. then sat by her bedroom door to prevent Gross from coming into her bedroom. Gross pushed the door in to gain access to her bedroom. M.W. testified that Gross pulled her shorts down, put his head between her legs, and put his mouth on her vagina. M.W. stated that she tried to push Gross off of her to no avail.

{¶ 8} Detective Levicki of the Painesville Police Department testified that in 2008, he was informed of a situation where sexual abuse occurred. Detective Levicki stated that during his initial interview with M.W., she did not make eye contact, she was very embarrassed, and he did not learn of any details of the incident except that "something did happen to her, that she did not want it to happen." Detective Levicki stated that after speaking with Brenda and learning new information about the incident, he found it necessary to interview M.W. again. A follow-up interview was scheduled, and Detective Levicki testified that M.W. was more "willing and able to tell her side of the story."

{¶ 9} The jury also heard an audio tape of Gross's version of the events; this interview with the police took place while Gross was incarcerated on separate charges. During this interview, Gross initially admitted to having consensual oral sex with M.W.; however, he recanted this statement and stated that he was about to give oral sex to M.W., and M.W. informed him that she was 18 years of age.

{¶ 10} Gross was found guilty of kidnapping, rape, gross sexual imposition, and unlawful sexual conduct with a minor. Gross was sentenced to a total term of 15 years in prison.
.

### III. PROCEDURAL HISTORY

**A.  INDICTMENT AND TRIAL**

On December 6, 2010 criminal charges were filed against Petitioner after the October term of the 2010 Lake County Grand Jury returned a three-count Indictment in Case No. 10CR728, charging Petitioner in Count 1, with Kidnapping, a Felony of the First degree, in violation of OHIO REV. CODE § 2905.01(A)(4), Count 2, Rape, a Felony of the First degree, in violation of OHIO REV. CODE § 2907.02(A)(2), and Count 3, Gross Sexual Imposition, a Felony of the Fourth degree, in violation of OHIO REV. CODE § 2907.05(A)(1) (Docket No. 9, Attachment 1, pp. 1-2 of 229).  On December 28, 2010, Petitioner, appearing with defense counsel, pleaded not guilty to the charges set forth in the Indictment (Docket No. 9, Attachment 1, p. 3 of 229).

An additional charge was filed against Petitioner on April 8, 2011, after the April 2011 term of the Lake County Grand Jury returned a one-count Indictment in Case No. 11CR178, charging Petitioner with Unlawful Sexual Conduct with a Minor, a Felony of the Third degree, in violation of OHIO REV. CODE § 2907.04(A) (Docket No. 9, Attachment 1, pp. 4-5 of 229).  Petitioner was arraigned on the charges before trial on April 11, 2011 and

3

entered a plea of not guilty to the Unlawful Sexual Conduct with a Minor charge (Docket No. 9, Attachment 1, p. 8 of 229).

The State's motion to consolidate Case No. 11CR178 and 10CR728 was granted by the trial court's Judgment Entry filed on April 11, 2011 (Docket No. 9, Attachment 1, pp. 6-7; 9 of 229). The trial court designated Petitioner's Unlawful Sexual Conduct with a Minor charge in the consolidated case as Count 4 (Docket No. 9, Attachment 1, p. 15 of 229).

Before trial, Petitioner filed a pro se Motion with the trial court seeking to remove his defense counsel (Docket No. 9, Attachment 1, p. 10 of 229). Pursuant to OHIO CRIM. R. 49(C), the trial court ordered Petitioner's correspondence to be stricken from the court's docket for failure to file proof of service (Docket No. 9, Attachment 1, p. 11 of 229). On March 4, 2011, Petitioner's counsel filed a Motion For Appointment of New Council [sic] and requested a hearing (Docket No. 9, Attachment 1, pp. 12-13 of 229). On March 24, 2011, the trial court held a hearing, ultimately denying Petitioner's Motion and scheduling a jury trial to begin on April 11, 2011 (Docket No. 9, Attachment 1, p. 14 of 229).

On April 11, 2011, a jury trial commenced in which Petitioner was represented by defense counsel (Docket No. 9, Attachment 1, pp. 15-16 of 229). On April 13, 2011, the Jury found Petitioner guilty of Count 1, Kidnapping, a Felony of the Second degree, in violation of OHIO REV. CODE § 2905.01(A)(4), with a special finding that Petitioner released the minor victim in a safe place unharmed; Count 2, Rape, a Felony of the First degree, in violation of OHIO REV. CODE § 2907.02(A)(2); Count 3, Gross Sexual Imposition, a Felony of the Fourth degree, in violation of OHIO REV. CODE § 2907.05(A)(1) and Count 4, Unlawful Sexual Conduct with a Minor, a Felony of the Third degree, in violation of OHIO REV. CODE § 2907.04(A), with a special finding that Petitioner was ten or more years older than the minor victim (Docket No. 9, Attachment 1, pp. 17-24 of 229).

On May 12, 2011, the trial court sentenced Petitioner to a total of 15 years in prison, five years on Count 1 and ten years on Count 2, to be served consecutively. The trial court also found Counts 3 and 4 merged into Court 2, pursuant to OHIO REV. CODE § 2941.141(A) (Docket No. 9, Attachment 1, pp. 25-28 of 229).

**B.    DIRECT APPEAL**

On June 13, 2011, Petitioner, through appellate counsel, filed a Notice of Appeal from the trial court's judgment and sentence to the Eleventh District of Ohio Court of Appeals (Docket No. 9, Attachment 1, pp. 29-33 of 229). In Petitioner's Brief, he raised the following assignments of error:

1. Court committed reversible error by failing to follow procedure defined by Ohio R. Crim. Pro 37 in allowing jury questions to be asked of Brenda Williams without allowing counsel for Appellant opportunity to review the written questions, opportunity to object to the written questions, and by asking follow up questions based on the original juror questions without providing them in writing to counsel for Appellant and allowing them the opportunity to object.

2. Court committed reversible error by failing to dismiss jury and allowing statements / evidence regarding Appellant's incarceration and status as "admitted drug dealer" to be introduced during opening by the Prosecution and during the playing of the un-redacted interview of the Appellant.

3. The trial court committed reversible error in upholding a verdict clearly against the manifest weight of the evidence.

4. The trial Court committed reversible error by allowing opinion /expert opinion testimony by both Brenda Williams and Detective Levicki with [sic] as it related to the emotional state and reasons for inconsistencies and delay in statements by the alleged victim.

5. Appellant was subject to ineffective assistance of counsel for their failure to file a motion in limine regarding Appellant's status as an incarcerated felon during his interview by the Painesville police and Appellant's statements regarding his status as an "admitted drug dealer" during the interview, failing to move for a mistrial based upon the Court's allowance of inadmissible evidence prejudicial to Defendant, failure to object or move for a mistrial based upon the Court's failure to voir dire and/or remove the juror whose spouse was present during proffer, and failure to object to the Court's violation of the procedure for asking for jury questions and/or failing to object to the questions themselves.

6. The trial court committed prejudicial error in failing to consider and issue a jury instruction regarding the definition of "force."

5

(Docket No. 9, Attachment 1, pp. 39-43 of 229). On December 21, 2011, the State filed its Brief in response (Docket No. 9, Attachment 1, pp. 70-107 of 229), and Petitioner filed his Reply on January 13, 2012 (Docket No. 9, Attachment 1, pp. 112-125 of 229). On June 29, 2012, the State appellate court affirmed Petitioner's convictions (Docket No. 9, Attachment 1, pp. 126-144 of 229).

**C.    PETITIONER'S FIRST APPLICATION TO REOPEN PETITION UNDER RULE 26(B)**

On October 25, 2012, Petitioner filed a pro se Application For Reopening, pursuant to OHIO APP. R. 26(B), alleging ineffective assistance of his appellate counsel (Docket No. 9, Attachment 1, p. 145 of 229). Petitioner's Brief alleged four assignments of error:

1. The court committed reversible error by failing to merge Rape and Kidnapping as allied offenses of similar import committed, they were not ran [sic] as allied offenses. This violated the double jeopardy clause of the fifth Amendment. The alleged victim was pulled to the floor for the purpose of rape. So in this case Kidnapping and Rape charged in this case are allied offenses of similar import. If the appeal consel [sic] would have raised this issue the decision would have been different. United State [sic] v. Nixon (Apr 25 2001) Lorain App NoooCA007638, Rance, at 636 710 N.E.2d 699 Rape, in Violation of R.C. 2907.02(A)(2).

2. The trial court erred in not allowing the recorded interview of M.W. in for the purpose of impeachment. Rule 613 Impeachment by self-Contradiction

    A. Examining witness concerning prior statement. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor it's [sic] contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel. During examination of a witness, conduct of the witness inconsistent with the witness testimony may be shown to impeach. This is also referenced in Rule (616) Method of Impeachment.
    Rule (616) Method of Impeachment.
    In addition to other methods, a witness may be impeached by any of the following methods = Specific contradiction = Facts
    contradicting a witness testimony may be shown for the purposs [sic] of impeaching the witness testimony. If the appeal consel [sic] would have raised this issue, the decision would have been different.

3. The trial court erred in allowing the trial to continue after a juror member sent a note to the judge saying, she will not agree to a guilty verdict. The trial should have been a miss trial

> [sic]. By allowing the trial to continue the trial court abused its discretion and authority, a Violation of my due process rights under the United States Constitution. If the appeal consel [sic] would have raised this issue, the decision would have been different.
>
> 4. The appellant was denied the affective assistance of appellate consel [sic], in Violation of his sixth and Fourtheenth [sic] amendment rights, under the United Stats [sic] Constitution and article I section 10 of Ohio Constitution for consel [sic] failure to raise the issue that the trial court deprived me of a fair trial for the fact that the prosecution had made the jury feel sensitive for the alleged victim. Plus there were not one member of my (peer) on the jury. Plus most of them were females. If the appeal consel [sic] would have raised this issue, the decision would have been different.

(Docket No. 9, Attachment 1, pp. 147-149 of 229).[1] On October 30, 2012, the State filed its Opposition To Appellant's Motion To Leave To File Delayed Application For Reopening (Docket No. 9, Attachment 1, p. 152-154 of 229). By Judgment Entry filed November 13, 2012, the State appellate court denied Petitioner's application as untimely, noting that he had failed to show good cause for his late application (Docket No. 9, Attachment 1, pp. 155-156 of 229).

**D. PETITIONER'S DELAYED APPLICATION FOR REOPENING PURSUANT TO APP.R.26(B) (SECOND APPLICATION)**

On February 4, 2013, Petitioner filed a second pro se Delayed Application for Reopening, under OHIO APP. R. 26(B), again alleging ineffective assistance of appellate counsel (Docket No. 9, Attachment 1, p. 157 of 229). Petitioner argued that he was unaware that he had to show good cause for his first untimely application under Rule 26(B) and cited his attorney's delay in providing him the appellate court's opinion and his lack of accessibility to the law library as reasons for his untimely application (Docket No. 9, Attachment 1, p. 158 of 229). Petitioner alleged the following assignments of error with respect to his appellate counsel:

> 1. The court committed reversible error by failing to merge Rape and Kidnapping as allied offenses of similar import committed [sic] They were not ran as allied offenses. This violated the double jeopardy clause of the fifth Amendment. If the appeal consel [sic] would

---

[1] The assignments of error alleged by Plaintiff here, and throughout the remainder of this Report and Recommendation, appear here as they were presented in Petitioner's filings, notwithstanding any grammatical, spacing, or capitalization errors.

7

      have raised this issue the decision would have been different.

2.     The trial court error [sic] when it refused to conduct an in-camera inspection of the alleged victim's statement, Pursuant to Crim. R. 16(B)(1)(g). If the appeal consel [sic] would have raised this issue the decision would have been different.

3.     The trial court erred in allowing the trial to continue after a juror member sent a note to the judge saying she will not agree to a guilty verdict. The trial should have been a miss trial [sic]. By telling the jury he run [sic] his court room different, saying he [sic] do not let them out of the deliberation room unless they all agree. By telling the jury that, the trial court abused its authority in Violation of my due process right's [sic] under the Constitution of the United States. If the appeal consel [sic] would have raised this issue, the decision would have been different.

4.     The appellant was denied the effective assistance of appellate consel [sic] in Violation of his sixth an [sic] fourtheenth amendment rights under the United States Constitution and article [sic] of section 10 of Ohio Constitution for consel [sic] failure to raise the issue, that the trial court deprived him of a fair trial for the fact that the prosecution had made the jury feel sensitive for the alleged victim. By telling the jury how M.W. was brought up and how she was liven [sic]. Plus all of the jurors were not of my peers and it was [sic] majority of them were females that were feeling sensitive for M.W. If the appeal consel [sic] would have raised this issue, the decision would have been different.

5.     The trial court committed reversible error by allowing the jury to enter a guilty verdict for Rape, Kidnapping and Gross sexual Imposition. Then there is no (Physical Evidence) to suport [sic] these charges. There is nothing in the police report that substantiate any acts of violents [sic]. M.W. also said in trial that I did not hurt her in any way nor did I threaten her in any way. (That I did not force her the way they were saying I did.) I was just to [sic] big. Now how can the judge allow the jury to find me guilty of Rape, Kidnapping and Gross sexual Imposition. When she said that in trial. Theses charges are all acts of force (right) Then how can I be found guilty of charges of force when nothen [sic] in this case substantiate them. That is not right. I have attached a copy of M.W. say this in trial. There is a copy of the trial transcript. This conviction is clearly against the weight of the evidence.

6.     The trial court committed reversible error by abuseing [sic] his authority a Violation of my due process rights under the United States Constitution. If the appeal consel [sic] would have raised this issue, the decision would have been different.

(Docket No. 9, Attachment 1, pp. 160-163 of 229). The State filed a response opposing Petitioner's latest Application and Memorandum on March 6, 2013 (Docket No. 9, Attachment 1, pp. 175-185 of 229). By Judgment Entry filed April 16, 2013, the State appellate court denied Petitioner's Application for failure to show good cause

(Docket No. 9, Attachment 1, pp. 186-187 of 229).

### E.   PETITIONER'S DELAYED APPEAL OF HIS DIRECT APPEAL

On May 6, 2013, Petitioner filed a Notice of Appeal and Motion For Leave To File Delayed Appeal with the Ohio Supreme Court, requesting that he be permitted to appeal the State appellate court's judgment of June 29, 2012 affirming his conviction (Docket No. 9, Attachment 1, pp. 188-189; 191-195 of 229). Petitioner argued that his counsel did not send him the State appellate court's opinion in enough time to allow him to file a timely appeal (Docket No. 9, Attachment 1, p. 193 of 229). By Entry filed June 19, 2013, the Ohio Supreme Court denied Petitioner's motion (Docket No. 9, Attachment 1, p. 216 of 229).

### F.   FEDERAL HABEAS PETITION

According to his filing, Petitioner placed his Petition for Writ of Habeas Corpus in the prison mailing system on May 14, 2014 (Docket No. 1, p. 13 of 13). Petitioner seeks habeas relief from his Judgment and Conviction in Case No. 10CR728 and alleges the following grounds in support of his petition:

> Ground one:   About force ] M.W., said I did not force her the way the prosecuting attorney was saying force is. She also said, she was just scared of my size. She also said, I did not put anything inside of her not then [sic]. How can you substantiate force, when force was not used?
>
> Ground two:   With kidnappen ] [sic] I did not pull her to the floor, nor did I hold her down by force. She got on the floor on her own. I asked her can I give her oral sex and she said yes, that it would be her first time.
>
> Ground three:   Gross Sexual Imposition] Is a act of force or a threat of force, and in this case there is no threat or force used, nor in this case is there something to substantiate force. Force or threat of force was not used.
>
> Ground four:   Against the manifest weight of the evidence.] The prosecution was saying force was manifested in this case. How could that be when there is nothen [sic] in this case that substantiate force.

(Docket No. 1, pp. 5-9 of 13).

9

## IV. ANALYSIS

**A.    PROCEDURAL REQUIREMENTS**

Before considering the merits of Petitioner's habeas claims, the undersigned Magistrate must determine whether there are any procedural barriers, which might limit the Court's ability to review the merits of Petitioner's constitutional claims. *See Daniels v. United States*, 121 S. Ct. 1578, 1582-1583 (2001).  The statute of limitations, procedural default and exhaustion of remedies are among procedural barriers limiting habeas review. *Id.*

**1.    STATUTE OF LIMITATIONS**

Petitioner submits his petition, pursuant to 28 U.S.C. § 2254, for Writ of Habeas Corpus by a person in state custody (Docket No. 1, p. 1 of 13).   The AEDPA created a one-year statute of limitations for applications for writs of habeas corpus filed by state prisoners. *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S.Ct. 141 (2012) (citing 28 U.S.C. § 2244(d)(1)).  The one-year limitation period typically begins to run from the latest date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A) (West 2015).  The law of the Sixth Circuit is that a judgment is not final and thus the "one-year statute of limitations period does not begin to run until the time for filing a petition for a writ of certiorari for direct review in the United States Supreme Court has expired." *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  Under the Rules of the Supreme Court of the United States, "a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of [the United States Supreme Court] within 90 days after entry of the judgment." SUP. CT. R.13.

To take an appeal as a right, Ohio appellate rules require the appellant to file a notice of appeal with the clerk of the trial court, within 30 days of the entry of a final order. *See* OHIO R. APP. P. 3(A), 4(A)(1).  Here, Petitioner's Judgment Entry of Sentence was filed by the Lake County Clerk of Courts on May 18, 2011 (Docket

No. 9, Attachment 1, p. 25 of 229). Petitioner filed a timely Notice of Appeal on June 13, 2011 (Docket No. 9, Attachment 1, p. 29 of 229). By Judgment Entry filed on June 29, 2012, the Ohio appellate court affirmed Petitioner's conviction (Docket No. 9, Attachment 1, p. 144 of 229).

To perfect a jurisdictional appeal with the Ohio Supreme Court from a judgment from an Ohio appellate court, the appellant must file a notice of appeal in the Supreme Court within 45 days from the entry of the judgment being appealed. *See* OHIO SUP. CT. PRAC. R. 7.01 (West 2015). Therefore, Petitioner had until Monday, August 13, 2012 to seek timely review of the State appellate court's decision. *See* OHIO SUP. CT. PRAC. R. 3.03(A) (West 2015). Petitioner did not, however, seek any such review with the Ohio Supreme Court, making August 13, 2012, the date on which the trial court's judgment became final since Petitioner could not have properly petitioned the United States Supreme Court for a writ of certiorari from the State appellate court's decision. *See* SUP. CT. PRAC. R. 13. On the following day, August 14, 2012, the one-year period of limitations under the AEDPA commenced and would have expired on August 13, 2013. *See* FED. R. CIV. P. 6(a)(1) (West 2015).

### a. STATUTORY TOLLING

The AEDPA's one-year limitation period is, however, subject to statutory and equitable tolling. "Section 2244(d)(2) provides for statutory tolling of the limitations period during the pendency of properly filed motions for state post-conviction relief or other collateral review." *Keeling*, 673 F.3d at 458. In order for a motion to be "properly filed," the Supreme Court has recognized that it must be "delivered to, and accepted by, the appropriate court officer for placement into the official record." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). If a state court accepts a petition only to later reject it as untimely, the petition cannot be "properly filed, and is not entitled to tolling under 28 U.S.C. § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

In this case, Petitioner filed his first pro se Application to Reopen his criminal case, pursuant to OHIO APP. R. 26(B) on October 25, 2012 (Docket No. 9, Attachment 1, p. 145 of 229). The Sixth Circuit has recognized that

11

"a Rule 26(B) application to reopen is a collateral matter rather than part of direct review." *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005)(overruling *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000)). In so holding, the Sixth Circuit observed:

> Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." In other words, "[s]ection 2244 explicitly distinguishes between the conclusion of direct review, after which the limitation period begins to run, 28 U.S.C. § 2244(d)(1)(A), and post-conviction remedies, during which the limitation period is merely tolled, § 2244(d)(2)." *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir.2003).

*Id.* at 345-46 (footnote omitted). Given that Petitioner's Rule 26(B) application was rejected for being untimely and failing to demonstrate good cause to excuse its tardiness, the undersigned Magistrate recommends that this Court find that the application was not "timely filed" and that the period of time the application was pending is ineligible for statutory tolling under § 2244(d)(2).

On February 4, 2013, Petitioner filed his second pro se Delayed Application To Reopen his criminal case under OHIO CRIM. R. 26(B), however, in this application he attempted to show good cause as required by state statute, arguing (1) that he was unaware in his prior petition that he had to show good cause for being untimely; (2) he had been prejudiced by his appellate counsel's failure to supply him with a copy of the appellate court's decision for 40 days, and (3) he had limited access to the law library (Docket No. 9, Attachment 1, p. 158 of 229). By Judgment Entry filed on April 16, 2013, the State appellate court denied Petitioner's Application on the basis that he had failed to demonstrate good cause (Docket No. 9, Attachment 1, pp. 186-187 of 229). Since Petitioner's application was denied for failing to demonstrate the cause as necessary to excuse an untimely filing under OHIO APP. R. 26(B), the undersigned Magistrate recommends that this Court find the second application was not "timely filed" and the time the application was pending is ineligible for statutory tolling under § 2244(d)(2).

12

On May 6, 2013, Petitioner filed a pro se Motion for Leave to File a Delayed Appeal and Notice of Appeal with the Ohio Supreme Court, requesting permission to appeal the State appellate court's judgment affirming his conviction (Docket No. 9, Attachment 1, pp. 188-89; 191-195 of 229). Petitioner again argued that his appellate counsel's tardiness in providing him the State appellate court's opinion deprived him of his constitutionally protected right to due process of law (Docket No. 9, Attachment 1, p. 193 of 229). On June 19, 2013, the Ohio Supreme Court denied his Motion (Docket No. 9, Attachment 1, p. 216 of 229). Since Petitioner's Motion For Leave to File a Delayed Appeal was timely filed, but denied, the undersigned Magistrate recommends that the 44 days that Petitioner's Motion was pending before the Supreme Court be tolled from his one-year limitation period under AEDPA. If the Court were to agree that only 44 days were tolled, Petitioner's one-year period of limitation would have expired on September 26, 2013, which is well before Petitioner filed his Petition for Writ of Habeas Corpus on May 14, 2014.

Even assuming that each of Petitioner's three filings had tolled the AEDPA one-year limitation period, Petitioner's petition would still be late. Petitioner's first application under Rule 26(B) was pending before the State appellate court for approximately 19 days before being denied on November 13, 2012 (Docket No. 9, Attachment 1, pp. 155-156 of 229). *See* 28 U.S.C. § 2254(d)(2) (West 2015). Petitioner's second application under Rule 26(B) was pending before the State appellate court for approximately 71 days before being denied on April 16, 2013. After adding an additional 44 days for the time Petitioner's Motion For Leave to File a Delayed Appeal was pending before the Ohio Supreme Court, Petitioner's one-year limitation period would have been extended for a total of 134 days or until December 26, 2013. *See* FED. R. CIV. P. 6(a)(C)(West 2015). Even under this more favorable scenario, Petitioner's federal habeas petition would still be time barred since he waited to file his petition until May 14, 2014.

### b. EQUITABLE TOLLING

"[I]n the Sixth Circuit a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Bluford v. Hudson*, 605 F.Supp.2d 946, 952-53 (N.D. Ohio 2009)(citing *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004)). "The petitioner bears the burden of demonstrating that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003)(citing *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)). The Supreme Court has held that a "'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010)(*quoting Pace*, 544 U.S. at 418).

Here, Petitioner does not expressly address the issue of equitable tolling, contending instead, that the one-year limitation in the AEDPA does not apply to his case because the sentence on his rape, gross sexual imposition, and kidnapping offenses are allied offenses under OHIO REV. CODE § 2941.25(A) and void pursuant to an Ohio appellate court decision in *State v. Holmes*, 2014 WL 4361331, at *4 (Ohio 8th Dist. Ct. App. 2014) (Docket No. 17). Petitioner further represents that he was unable to discover that his sentence was void because the law had not developed until the *Holmes* decision was rendered on September 14, 2014 (Docket No. 17, p. 2 of 2). Petitioner requests this Court stay his petition until he obtains a final order from the court below and that he be permitted to exhaust his claim rather than file a subsequent petition (Docket No. 17, p. 2 of 2). Respondent maintains that Petitioner has not met his burden for equitable or statutory tolling, his petition is time-barred and his claims concerning merger and allied offenses are procedurally defaulted (Docket No. 18).

Neither Petitioner nor the record of his post-conviction proceedings demonstrates his diligence in pursing his rights. Petitioner failed to perfect a timely appeal with the Ohio Supreme Court of the State appellate court's decision affirming his conviction and also failed to make timely filings with both of his applications to reopen his

14

criminal case under OHIO APP. R. 26(B). Petitioner offers no other explanations in his habeas filings, which might be construed as an argument that he has diligently pursued his rights as required for equitable tolling under *Holland*.

Petitioner's argument that he was unable to discover his sentence was void until the State appellate court's decision in *Holmes* could be construed as arguing an "extraordinary circumstance" under the second prong of *Holland*; however, Petitioner's argument lacks merit. Contrary to Petitioner's claim, a quick search of Ohio case law yields numerous cases interpreting Ohio's allied offense statute and the issue of merger, all of which predate the *Holmes* decision. *See State v. Williams*, 134 Ohio St.3d 482, 484, 489 (Ohio 2012)(affirming appellate court's finding that defendant's convictions for rape and kidnapping were allied offenses of similar import that should have merged at sentencing); *State v. Underwood*, 124 Ohio St.3d 365, 372 (Ohio 2010)("We have previously held that the imposition of multiple sentences for allied offenses of similar import is plain error."); *State v. Blankenship*, 38 Ohio St.3d 116, 117 (Ohio 1988)(holding that on the specific facts of the case that the offenses of kidnapping and felonious assault were not allied offenses of similar import.); *State v. Gibson*, 2009 WL 3043980, at *6 (Ohio 8th Dist. Ct. App. 2009)("Imposition of multiple sentences, even concurrent ones, for allied offenses of similar import is plain error.")(footnote omitted). Given that Petitioner has failed to establish both prongs of *Holland*, the undersigned Magistrate recommends that this Court find that Petitioner is not entitled to equitable relief and his Petition for Writ of Habeas Corpus is time barred by the AEDPA's one-year statute of limitation.

## V. CONCLUSION

For the reasons set forth above, the Magistrate recommends that this Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: February 5, 2015

## VI. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed. Pursuant to Local Rule 72.3(b), any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof. Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.